HEARD NOVEMBER TERM, 1875.

## McElwee *vs.* Jeffreys.

A levy, if sufficient to satisfy the execution, is *prima facie* evidence of satisfaction; but this is a mere presumption of fact, which may be rebutted by proof.

A levy in 1860 on two negroes, which were afterwards emancipated before sale made: *Held*, under the circumstances, not to amount to satisfaction. So also a levy on land which had not been sold and conveyed: *Held* to be no satisfaction. A receipt is a subject of explanation by parol and may be shewn to be erroneous.

BEFORE MACKEY, J., AT YORK, TERM, 1874.

This was an action by John H. McElwee against Thomas F. Jeffreys.

The questions of law involved in the case sufficiently appear from the facts stated in the decree of the Circuit Court and the opinion of this Court. The decree of the Circuit Court is as follows:

MACKEY, J. The facts in this case appear to be as follows:

On the 10th October, 1857, W. B. Dunlap, being insolvent, executed and delivered to L. H. Massey an assignment of his estate, consisting principally of slaves and land, in trust, to sell the same and apply the proceeds of sale to the payment of his debts, in classes, and in a certain order of priority therein prescribed. In specifying the order of payment of his debts, after first providing for the payment of the costs and expenses of the assignment, he directed as follows: "Second, to satisfy and pay all judgments and executions now in force against me, (I mean judgments that have been filed and entered in the Clerk's office before the second Monday in October of the present year)." The assignee proceeded to sell the property of Dunlap and collect the proceeds of sale. Afterwards, by consent of the assignee and other parties interested, T. S. Jeffreys, the defendant, was appointed the agent to take possession of the funds and distribute the same under the assignment, and it was admitted by the parties to this action that the amount received as yet by this agent for that purpose was $4,227. Under the terms of the assignment, the plaintiff claims to have the assets of said assigned estate applied to the payment of certain judgments assigned to him. The defendant resists the claim on the ground that said judgments are satisfied.

On 4th November, 1856, W. G. Erwin entered up judgment and lodged execution against J. N. McElwee, Jr., and W. B. Dunlap for $1,053.70 and interest thereon from 28th December, 1855.

On 18th March, 1857, W. G. Erwin assigned $1,077.23 of the debt in this case to the Bank of the State of South Carolina. On the execution, also, appears the following endorsement: " April 7th, 1857, applied from receipt of $613.85 given to J. N. McElwee, to this *fi. fa.*, ninety-five dollars and thirty-three cents, in full of balance of debt, interest and costs on this case. Signed, S. C. Youngblood, S. Y. D." There also appears on the execution a levy, on 21st March, 1860, by the Sheriff of Lancaster, on two negroes, Henry and Mack, levied on as the property of W. B. Dunlap, but in the possession of J. Foster.

On 22d September, 1856, the President and Directors of the Bank of the State of South Carolina entered up judgment and lodged execution against the said J. N. McElwee, Jr., and W. B. Dunlap, for $2,106.49, with interest thereon from 30th November, 1854. The execution in this case has been lost, but the loss accounted for.

On 18th January, 1860, the bank assigned the last mentioned judgment, and its interest in the first mentioned judgment, to the present plaintiff.

On these judgments J. N. McElwee, Jr., was the principal debtor and W. B. Dunlap the surety. The latter, however, was heavily indebted to the former. The debt had passed into judgment, and Dunlap agreed that the executions against him as surety should be enforced against him, and, that the same, when collected, should be a *pro tanto* satisfaction of the debt owing by him to J. N. McElwee, Jr. In the early part of the year 1857, J. N. McElwee, Jr., was in embarrassed circumstances; his property had been levied upon; some of his slaves had been sold, and the proceeds of sale applied in satisfaction of a portion of the judgments against him; his real estate had also been exposed to public sale by the Sheriff, but no sale of the same had been completed, no entry of the same had been made in the sale book, nor any purchase money paid therefor. At this time J. N. McElwee, Jr., went to the bank and made an arrangement whereby the bank advanced money to pay the creditors and to have the executions assigned to itself. About five thousand dollars was advanced for that purpose, McElwee giving his note with sureties for the amount, and he and

W. B. Dunlap consenting that the judgment should be assigned to the bank and stand open as an additional security to the bank.

Under this arrangement the judgments were not pressed against the defendants.

On 18th January, 1860, John H. McElwee, the plaintiff in this action, purchased the aforesaid two judgments against J. N. McElwee, Jr., and W. B. Dunlap, and the said judgments were assigned to him, he giving to the bank his own note therefor with a number of sureties. Under this state of facts the defendant claims that the judgments are satisfied.

The plaintiff has satisfactorily explained away the presumption of payment arising from the levy under the first mentioned judgment. It appears that the slaves then levied upon were claimed by one J. Foster, and that, pending the litigation in reference to the same, the slaves were emancipated. The levy is only *prima facie* evidence of satisfaction, and proof that, without fault of the plaintiff, the property levied upon was not sold and applied in satisfaction of the debt repels the presumption.—*May* vs. *Hancock*, (MS. Decision 1,) Rice Dig., 303; *Mayzick and Bell* vs. *Coil*, 2 Bailey, 101.

In regard to the alleged sale of lands, there was no compliance with the usual terms of sale; no titles were made or money paid; no entry of sale was made in the sale book, and all parties in interest treated it as no sale. There was, properly speaking, no sale of the lands.—*Herbemont* vs. *Sharp*, 2 McC., 264; *Lewis* vs. *Brown*, 4 Strob., 293.

From the testimony, it is apparent that the credit of $95.33 endorsed on the first mentioned execution was not a satisfaction of the whole execution, but only of the balance due W. G. Erwin. The evidence is satisfactory that neither the bank or J. N. McElwee, Jr., or W. B. Dunlap intended the proceedings had or the arangements made to be in satisfaction of the judgments, and hence there could be no satisfaction.—*Carson* vs. *Richardson*, 3 McC., 528; *Wilson* vs. *Wright*, 7 Rich., 404; *Moore* vs. *Edwards*, 1 Bailey, 23; *Kirkpatrick* vs. *Ford and Aiken*, 2 Sp., 112.

The evidence of one witness is to the effect that, at the very time Dunlap was preparing his assignment, he expressed an intention to defeat a debt due to one Edwards, but said that he intended in the assignment to provide for the payment of these judgments.

As to the judgments of junior date which were paid, amounting to $554.87, the counsel of the plaintiff admitted that this should be credited on the oldest judgment on the day it was paid into the Sheriff's office, to wit, 2d March, 1857.

The other judgment mentioned in the complaint, that obtained by Daniel Wallace, and subsequently assigned to the bank, and by the bank assigned to the plaintiff, it was admitted in the argument not to come within the terms of the assignment, as it was obtained after the date of the assignment, and the claim as to it was abandoned.

It appears to the Court that the plaintiff has satisfactorily established his right to the relief demanded in his complaint, with the exceptions just above mentioned. The claim that these judgments were paid off and satisfied appears to be a new one. After the time at which the defendant claims that these judgments were paid the assignment thereof was made to the bank, and still longer afterwards the assignment was made by the bank to the plaintiff.

The weight of the testimony, in the opinion of the Court, is clearly to the effect that the judgments were never intended to be satisfied under the arrangements made between the parties, and that as a matter of fact they never were satisfied.

In the opinion of the Court, the balance of the judgment of $2,106.49, with interest thereon from 30th November, 1854, less a credit of $554.87 on 2d March, 1857, and the balance of the judgment of $1,053.75, with interest thereon from 28th December, 1855, less a credit of $95.33 on 7th April, 1857, are still unpaid.

The defendant, after paying the necessary costs and expenses provided for in the assignment, should next apply the assets of the assigned estate to the payment of the balances due on the aforesaid two judgments, and it is so ordered.

To the foregoing order and decree defendant appealed on the following grounds:

1. That the executions in the case of the *President and Directors of the Bank of the State* vs. *J. N. McElwee, Jr., W. B. Dunlap et al.*, and in the case of *W. G. Erwin* vs. *J. N. McElwee, Jr., and W. B. Dunlap*, were, by operation of law and in fact, paid.

2. That in February and March, 1857, personal and real estate of J. N. McElwee, Jr., was levied upon and sold by the Sheriff to an amount sufficient to pay the above executions and those of same

and of older date, and that said executions were in fact paid from the proceeds of said sale and receipted in full, and were not in force against W. B. Dunlap at the date of his deed of assignment, 10th October, 1857.

3. That no agreement made afterwards by W. B. Dunlap could affect the vested rights of creditors under said deed of assignment.

4. That from said levy and sale the sum of $8,980 was actually realized and paid to the Sheriff, and that the surety, W. B. Dunlap, was thereby, in law, released from all further liability under said executions, and that it was not in the power of the said W. B. Dunlap to revive the same against himself to the prejudice and defrauding of creditors.

5. That the entry of sale of land in the Sheriff's book is merely directory, and the omission did not invalidate sale, and that the statement in the decree that no purchase money was paid on account of said sale is an error.

6. That the decree omits any notice of the fact that the bank case was, according to the evidence of the Sheriff, satisfied in full by payment to the attorneys of the bank, and a receipt in full given, and that there was no instruction to him from the bank to leave said *fi. fa.* open.

7. That had not the execution of W. G. Erwin *vs.* J. N. McElwee, Jr., and W. B. Dunlap been previously satisfied, the subsequent levy upon two slaves of W. B. Dunlap and actual possession and control of them until emancipated operated in law as a satisfaction of said execution.

8. That the decree ordering alleged balances on said judgments to be paid is contrary to law and the evidence.

*Wilson,* for appellant.

*Clawson & Thomson,* contra.

April 20, 1875.   The opinion of the Court was delivered by

WRIGHT, A. J.   The single question involved in the issue made by the pleadings is to be determined by the weight of the evidence in regard to the satisfaction of the judgment obtained by the respondent, to be paid out of the proceeds of the assignment of W. B. Dunlap to appellant for the benefit of his creditors.   We see no error on the part of the Circuit Judge in applying the law to

the conclusion which he reached on the facts. A levy, if sufficient to cover the amount of the execution, is *prima facie* evidence of satisfaction; but the presumption may be rebutted by proof that without fault on the part of the plaintiff it failed to produce it. The Sheriff would be liable if the property levied under the execution had been lost through his neglect, yet he would be allowed to discharge himself by showing that the property did not belong to the defendant, or that it was lost notwithstanding all the care that human foresight could provide for its security. Nor does it follow that a levy is to be regarded as satisfaction because the Sheriff allows it to remain in the possession of the defendant, even though the result of it may be loss, if, by authority of law, he or his bailee is not permitted to enforce it. The execution against Dunlap cannot be held satisfied to any amount by the levy of the two slaves when their sale was prevented by emancipation. This would throw the loss not on the debtor but the creditor, which would be in direct conflict with the principle on which the ruling in *Calhoun* vs. *Calhoun* (2 S. C., 283,) proceeded.

On the facts proved the presiding Judge held that neither of the executions claimed through the assignment of the bank to plaintiff had been satisfied. We perceive nothing in the evidence to convince us that there is error in the conclusions which he drew from it. The sale of the land of J. W. McElwee, Jr., under the execution of Steele, was never perfected. No bid was paid, no title executed, and to say that a mere barren ceremony from which no money followed could amount to a satisfaction of it would be a proposition too unjust and unreasonable even for consideration. There is one ground presented by the appellant which, although it may not have escaped the observation of the presiding Judge, has not been noticed in his decree. It, however, deserves consideration. It relies upon the receipt referred to in the testimony of Sheriff Youngblood, executed to him by Messrs. Dawkins and Melton, the attorneys of the bank, for the amount of the execution against J. W. McElwee, Jr., in its favor. Standing by itself it might be conclusive against the bank. A receipt, however, may be explained, and the other circumstances in proof clearly admit of a construction which must necessarily destroy its effect as an acknowledgment of payment. The same witness said that the bank had transmitted a check to meet the executions in the office against the same defendant, which were to be left open for its

benefit. In the statement prepared by him he included the execution which the bank itself held, amounting to $2,449.91. After paying to the plaintiffs in the other cases the sums due on their executions, which were then either assigned to the bank or left open for its use, the Sheriff found remaining in his hands the amount called for by the execution of the bank. Instead of returning it to the attorneys who represented the bank, and specifying in the receipt which they were to give on its acceptance the proper account on which it was paid, the receipt was written as if in payment by the Sheriff of the amount due on the bank judgment. If this receipt can be set up as a bar to the claim of the bank, it would actually lose its whole debt, for the money returned by the Sheriff was its own, and, according to his testimony, was of the proceeds of the check or draft which it had remitted. The witness admits his mistake including the bank case among the cases which he had marked "assigned" to it. There is no dispute that the bank did recover this judgment, and the explanation so conclusively shows error in the terms of the receipt that it cannot be resisted. In aid of the explanation, this fact is not without signifi cance: That the Sheriff, following the instructions which had been given to him, made no entries on this execution either of payment or other action. The whole purpose intended to be accomplished by the bank, through the loan for the purchase of the other judgments, would have been defeated by the satisfaction of its own execution. If it proposed to do this, it could have been accomplished by a mere entry to that effect. It is not reasonable to suppose that it would have gone through the idle form of paying with one hand and taking it back with the other. After the transaction to which the Sheriff refers, it was assigned to the plaintiff, and to say that the bank transferred to him a judgment for valuable consideration which, in fact, had been previously paid, is to charge it with an act of dishonesty without the least testimony to sustain such an allegation.

The motion is dismissed.

*Moses,* C. J., and *Willard,* A. J., concurred.